UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:12-cv-22481-UU

JOSEPH F. WHELAN, JR.,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,

    Defendant.

_____/

**FIRST ORDER ON MOTIONS IN LIMINE**

THIS CAUSE is before the Court upon Defendant's Motion *in limine* to Preclude Evidence, Testimony, Argument, or Reference Regarding Subsequent Remedial Measures, D.E. 76; and Defendant's Motion *in limine* to Preclude Evidence, Testimony, or Argument Regarding Non-Binding Standards, Recommendations, and Guidelines as Establishing the Applicable Standard of Care, D.E. 77; and Defendant's Motion *in limine* to Exclude Opinions of Plaintiff's Liability Expert Ronald Zollo, D.E. 61. Plaintiff has responded to all three Motions, which are now ripe for disposition.

THE COURT has reviewed the Motions, the pertinent portions of the record, and is otherwise fully advised in the premises. While Defendants have submitted many motions *in limine*, the Court will first address the two instant Motions because Defendant's summary judgment motion turns, in part, on the admissibility of evidence that Defendant objects to herein.[1]

**BACKGROUND**[2]

This is a maritime wrongful death action in which Plaintiff seeks to recover damages for the death of Decedent, Sheila Jackson Priebel, which Plaintiff alleges was caused by injuries

---

[1] The Court will address the parties' motions to exclude expert testimony in a separate order, following the filing of reply briefs in support thereof.

[2] The following set of facts are those especially relevant to the three Motions disposed of in this Order, and does not include all of the facts relevant to this action as a whole.

sustained aboard Defendant's ship, *Explorer of the Seas*. Plaintiff, Joseph Whelan, Jr., is Decedent's son. D.E. 1 ¶ 3(b). On or about September 25, 2010, Decedent boarded the *Explorer of the Seas* as a paying passenger for a cruise vacation. *Id.* ¶ 11. On or about September 30, 2010, Defendant directed Decedent and other passengers to wait in an area of the ship called The Chamber to disembark the ship at the Port of Bayonne, in New Jersey. *Id.* ¶ 12. The Chamber is a club occupying space on two decks of the ship, with the two floors connected by a flight of stairs. *Id.* ¶ 13. Decedent fell from a single step at or near an exit area of The Chamber after descending the flight of stairs immediately next to this single step. *Id.* ¶ 14. Plaintiff alleges that the change of elevation of the single step made her unable to maintain walking stability in a timely manner, thus precipitating her fall. *Id.* ¶ 15.

      Plaintiff alleges a number of deficiencies that made the single step a dangerous condition. These include: inadequate marking of the single step; a confounding contrast between the colors of the treads on the flight of stairs and those of the carpet on the landing; the absence of adequate indicators of a change in elevation at the single step; the placement of brass short railing that was improvidently curved on top; the dim lighting of The Chamber; the contrast in lighting between the risers of the flight of stairs and the rise of the single step; etc. *Id.* ¶ 17. Plaintiff alleges that Defendant has changed the configuration of the area at least four times *before* Decedent's fall, "specifically because the condition was so dangerous and these others had fallen because of it." *Id.* ¶ 23.

## DISCUSSION

### A. Subsequent remedial measures

      Defendant moves to exclude any evidence, testimony, argument or reference regarding certain black-and-yellow tape that was installed on the single step where Decedent fell aboard Defendant's ship. Federal Rule of Evidence 407 states: "When measures are taken that would

have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." At the time of Decedent's fall, the single step had yellow luminescent tape, which was subsequently replaced. The reason for the change in tape type following Decedent's fall was the subject of extended questioning by Plaintiff's counsel at various depositions.

Plaintiff does not dispute Defendant's statement of the law with respect to subsequent remedial measures, but does dispute that the deposition testimony by the *Explorer of the Sea*'s Chief Safety Officer, Luis Freile, D.E. 94-3, and that of Defendant's corporate representative, Amanda Campos, D.E. 94-4, necessarily establish that installation of the black-and-yellow tape was a subsequent remedial measure. In essence, Plaintiff creates an issue of fact as to whether the tape was a subsequent remedial measure by marshaling evidence that the Chief Safety Officer did not know when or why the tape was replaced, and that Defendant's corporate representative did not know who decided to install the new tape or whether it had anything to do with Decedent's fall. Plaintiff questions the tape's status as a subsequent remedial measure, and then "defer[s] to this Honorable Court the answers to these questions." D.E. 94, at 4. Assuming the Court finds the black-and-yellow tape to be a subsequent remedial measure, "Plaintiff seeks practical guidance on how to address the issue as it relates to depositions taken in this matter to be used at trial." *Id.* at 2.

At the outset, the Court holds that, for the purpose of this Motion, the installation of the black-and-yellow tape was a subsequent remedial measure subject to Rule 407. Plaintiff raises some interesting questions, but they are largely academic. Plaintiff might have argued, in its Response, that the testimony she elicited regarding the tape was evidence of "control of the subject area." Control of the architectural and interior design of cruise ships often plays a critical

role in this type of maritime tort action,[3] but Plaintiff makes no such argument and has therefore waived it for the purposes of this Motion. Having offered no other purpose for admitting this evidence, it can only be concluded that it would be used to prove Defendant's negligence or other wrongdoing, and must therefore be excluded. *Cf. In re Air Crash Disaster*, 86 F.3d 498, 531-32 (6th Cir. 1996) (maintaining that change in company procedure after accident was a subsequent remedial measure and therefore inadmissible under Rule 407). Moreover, because the black-and-yellow tape did not exist at the time of Decedent's fall, presenting it to the jury would potentially lead to confusion.

This Motion, however, cannot be disposed of without first solving a problem of Defendant's own creation. Plaintiff avers that until May 7, 2013, Defendant withheld photographs depicting the single step as it existed at the time of Decedent's fall, presumably on the basis of the work-product doctrine. Defendant finally produced the photographs on May 7, 2013 in response to Plaintiff's Fourth Request for Production. During the intervening depositions, Plaintiff had to rely on photographs of the single step taken after Decedent's fall, which featured the new black-and-yellow tape. Consequently, the Court will not bar the admission of all testimony referencing the post-fall photographs, as to do so would work an obvious injustice on Plaintiff. Rather, the Court will allow Plaintiff to use of the pre-fall photograph and the post-fall photographs in conjunction with testimony regarding other features of the subject area. To the extent the post-fall photographs are used, the Court will, as needed, instruct the jury that while the photographs are not *identical*, they are materially similar with respect to the relevant testimony (*e.g.*, testimony regarding elevation of the single step), and that

---

[3] Where a plaintiff cannot prove that the defendant ship owner had actual or constructive notice of the allegedly hazardous feature, she must present evidence "that the defendant actually created, participated in, or approved the design" of that hazardous feature. *See Mendel v. Royal Caribbean Cruises, Ltd.*, No. 10-23398, slip op. at 6 (S.D. Fla. June 26, 2012) (citing *Rodgers v. Costa Crociere, S.P.A.*, 410 F. App'x 210 (11th Cir. 2010)).

the jury should assign no significance to the fact that the color or pattern of the tape differs among the photographs.

### B. Non-Binding Standards, Recommendations, and Guidelines

Defendant moves that the Court preclude Plaintiff from presenting evidence, testimony, or argument regarding certain non-binding standards, recommendations, and guidelines as establishing the applicable standard of care. The motion is brought pursuant to Federal Rules of Evidence 401, 402, and 403. But the Motion also turns on substantive maritime law, which is informed generally by federal common law. Defendant seeks a ruling precluding Plaintiff from using four such guidelines in particular: (1) Consumer Product Safety Commission, U.S. Department of Commerce, *Guidelines for Stair Safety* (May 1979); (2) National Fire Protection Association (NFPA), *Life Safety Code*; (3) The Florida Building Code; and (4) The American with Disabilities Act (ADA) Accessibility Guidelines. Defendant has identified these sources in particular because Plaintiff's liability expert cites them in his Expert Report, D.E. 77-1, and Addendum to the Expert Report, D.E. 77-2. The Court will exclude each of these.

The duty owed by a ship owner or operator to its passengers is one of reasonable care under the circumstances. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959); *Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355, 1358 (11th Cir. 1990). Plaintiff concedes that this is the applicable standard. The question then becomes: How does one define reasonable care under the circumstances? One way of establishing what is reasonable under the circumstances is to present evidence of industry practice or guidelines. *See Cook v. Royal Caribbean Cruises, Ltd.*, No. 11-20723, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012) ("[A]dvisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence."); *Cooley v. Sunset Yacht Charters, Inc.*, No. 10-61928, 2011 WL 2938431 (S.D. Fla. July 19, 2011) ("[E]vidence of industry

standards is not prohibited in a maritime claim.") (citing *Pappas v. Potomac Party Cruises, Inc.*, 215 F.3d 1320 (4th Cir. 2000) (table decision)).

Here, only *Guidelines for Stair Safety* relates in any relevant way to the factual issues at stake in this case. The issue of stair safety, regardless of whether on dry land or at sea, is obviously relevant to this case. *Cf. Cook*, 2012 WL 1792628, at *4 ("[T]he Court cannot conclude at this stage that a guideline for a land-based walkway is completely irrelevant to a passenger walkway on a large cruise ship."). But relevance is not enough. "Evidence of custom *within a particular industry, group, or organization* is admissible as bearing on the standard of care in determining negligence." *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180-81 (5th Cir. 1975) (emphasis added) (applying federal law). The purpose of admitting such evidence is to show the ordinary practice. *Id.* at 1881 n.2 (citing 29 Am. Jur. 2d Evid. § 318 (1967)).

Plaintiff has not shown that *Guidelines* is evidence of custom within the maritime industry, let alone that it is evidence of ordinary practice among engineers or architects. *Cf. Miss. Power & Light Corp. v. Whitescarver*, 68 F.2d 928, 930 (5th Cir. 1934) (upholding exclusion of *National Electric Safety Code*, also issued by the Department of Commerce, where there was no evidence linking the offered code with any custom in the lighting industry). In *Muncie Aviation Corp.*, a negligence action arising from an air collision, the Fifth Circuit upheld admission into evidence of circulars published by the Federal Aviation Administration because witnesses for both parties testified to their general familiarity with the circulars. 519 F.2d at 1181. Plaintiff here does not marshal any testimony tending to show that Defendant or the designers of the subject single-step were familiar with *Guidelines*.

The three other sources objected to herein suffer from the same infirmity but, in addition, Plaintiff also fails to show that they "make a fact more or less probable than it would be without

the evidence." Fed. R. Evid. 401(a).  Moreover, each one carries with it a risk of confusing or misleading the jury.  The ADA standards, for one, are not applicable to claims that arise from cruise-ship slip-and-fall cases.  *See Mitchell v. Royal Caribbean Cruises, Ltd.*, No. 12-22734 (S.D. Fla. June 7, 2013) (collecting cases).  The Florida Building Code, which may be applicable on dry land in this forum, does not apply to cruise ships.  Finally, the NFPA's *Life Safety Code* is irrelevant and might also have a prejudicial effect, given that Plaintiff has not alleged that Decedent's injury resulted from Defendant's failure to conform to fire safety standards.

### C. Expert opinion of Ronald Zollo

Defendant seeks to exclude any opinion testimony by Plaintiff's liability expert, Ronald Zollo, PhD.  Plaintiff retained Dr. Zollo to provide engineering opinions with respect to the design and maintenance of the single step on which Decedent fell and to opine on whether it conforms to minimum reasonable standard for safe practices for public safety.  An expert report should, under Federal Rule of Civil Procedure 26(a)(2)(B), clearly enumerate and identify the discrete opinions its author intends to offer at trial.  Dr. Zollo has failed to do so in his report, D.E. 61-3, but Defendant has identified Dr. Zollo's various opinions and Plaintiff does not take issue with Defendant's enumeration.  Dr. Zollo offers opinions on: (1) the lighting of The Chamber; (2) the "narrow passage spaces" on either side of the railing nearest the single step; (3) the design utility of that railing; (4) the lack of "special edge lighting"; (5) passenger recognition of change in elevation; (6) the similarity of prior incidents and the sufficiency of modifications made after prior incidents.

Defendant argues that each of these opinions should be excluded because they are not sufficiently reliable and because they would not be sufficiently helpful to the jury.  Federal Rule of Evidence 702 requires that an expert opinion satisfy both of these criteria.  A court determining the reliability of an expert opinion must consider: (1) whether the expert's theory

can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

### *1. Lighting*

Dr. Zollo's opinion regarding the appropriate level of specific and directed lighting at the single step is not reliable. Dr. Zollo's report explains that a malfunction of his light meter prevented him from using the instrument to quantify the level of light in lux (the applicable unit of measurement), but that in his judgment, the light levels at the time of inspection did not rise to 10 lux. D.E. 61-3, at 4. According to Dr. Zollo, "[t]he point to be made here is that the stairway steps are distinguished by special lighting but the single step which would be underfoot immediately after turning to enter the lounge had no such distinction." *Id.* at 3-4. Dr. Zollo then cites *Guidelines for Stair Safety* for the proposition that it is the level of specific and directed lighting "on the step, stair, or encroachment" that is important, rather than the level of "general lighting."

First, it is not clear what Dr. Zollo's opinion actually is. Presumably Dr. Zollo is of the opinion that there was insufficient lighting directed at the single step in particular, and that the lack of lighting contributed to Decedent's inability to appreciate the change in elevation. Plaintiff argues that "Dr. Zollo's inoperable light meter is a true red herring in this issue," D.E. 96, at 5, and Plaintiff is largely correct. But Plaintiff is himself responsible for trotting out this red herring. The real issue is that Dr. Zollo offers no methodology by which one can determine whether there was sufficient light directed at the single step. His citation to *Guidelines for Stair Safety* does not include a discussion of what level *would* be appropriate under conditions such as the one at issue. His theory, therefore, cannot be tested and, in any event, the

Court has no basis for finding that Dr. Zollo's technique – whatever it may be – is generally accepted in the relevant scientific community.

### 2. Narrow passage spaces

Dr. Zollo's opinion regarding the creation of narrow passage spaces at the single step is not reliable. Dr. Zollo opined that the rail installed at the single step created a "relatively narrow passage space that creates the impression of a portal passageway at which a change in elevation would not be expected." D.E. 61-3, at 4. Dr. Zollo's conclusion follows his recitation of measurements taken of the space during his inspection. The measurements, of course, can be tested for accuracy, but his conclusion as to what is or is not "to be expected" as a result of those dimensions is nothing more than *ipse dixit*. Dr. Zollo's report cites no authority in supporting his conclusion. Nor does Dr. Zollo provide any methodology or parameters – supported or otherwise – for determining under which circumstances this "impression of a portal passageway" is created.

Plaintiff's response fails to salvage Dr. Zollo's inadmissible opinion. Although Plaintiff argues that Dr. Zollo's opinion is supported by *Guidelines for Stair Safety* and by *In Plane View*, the citations contained in his brief do not make this opinion any more reliable. For example, Plaintiff quotes *In Plane View*'s assertion that "the priority of a person entering a hallway or any new physical environment is to place oneself in the center of the objects around them." D.E. 96, at 5. A quotation from *Guidelines for Stair Safety* discusses "an often subconscious process" known as "orientation activity." As with the lighting opinion discussed above, Dr. Zollo does not explain how these sources provided him with the methodology or parameters for determining the impression of a portal passageway was created in this case.

### 3. Handrail

Dr. Zollo's opinion with respect to the handrail installed at the single step is not

sufficiently reliable and might be helpful to the jury.  In his report, Dr. Zollo opines that "[t]he single vertical rail installation . . . does not properly indicate the elevation change at the single step," and that "the top of the rail should be contoured to the slope in a manner representative of the average slope associated with the single step."  D.E. 61-3, at 4.  Dr. Zollo cites *Guidelines for Stair Safety*, but, as discussed in Section B, *supra*, of this Order, the Court will not admit that publication into evidence.  Even if the Court had decided otherwise with respect to the admissibility of *Guidelines*, Dr. Zollo does not tie his opinion to any particular section thereof.  Plaintiff's brief does cite Section 2.7.5.  The *commentary* to that section reads: "Alternative cues such as the slope of the handrail . . . can signal the presence and direction of the stair."  D.E. 96-5, at 110.  This statement does not offer any sort of methodology or parameters by which an expert may determine whether the handrail was an appropriate or sufficient cue indicating the change in elevation at the single step.

### 4. *Special Edge Lighting*

Defendant moves to exclude Dr. Zollo's testimony with respect to strip lighting at the edge of the single step.  In this portion of its Motion, Defendant seems to conflate Dr. Zollo's opinion with respect to "special and directed lighting" (and lighting generally), with his testimony in the *Griggs* litigation concerning the strip of luminescent tape.  As discussed in Section C.1, *supra*, of this Order, the Court will exclude Dr. Zollo's testimony with respect to lighting.  As for the luminescent tape – Dr. Zollo's report observes only that "the yellow tape which appears adhered to the metal edge strip in the aftermath of the Griggs incident had been replaced by a tape with black and yellow alternating stripes."  D.E. 61-3, at 3.  This is not an opinion.  Therefore, to the extent that Dr. Zollo intended to offer testimony regarding any sort of tape on the single step, such testimony is excluded.

### 5. *Passenger recognition of change in elevation*

Dr. Zollo's opinion with respect to passenger recognition of change in elevation is not reliable and must therefore be excluded. In his report, Dr. Zollo opines that "the area was improperly configured for the intended purpose," because various factors contributed to "the disguised nature of the construction." *Id.* at 5. Dr. Zollo cites and quotes *In Plane View* in support of his conclusion. The passage quoted in the report deals with circumstances "in a developed walking or working environment," in which pedestrians "are functionally blind to objects that are very close." As discussed in Section B, *supra*, of this Order, Plaintiff has failed to show that this 1994 article from the *Journal of Occupational Safety and Health* is a sufficiently authoritative source on the matters for which it is cited. Even if the Court were to allow this source into evidence, Dr. Zollo's report does not identify any methodology or standard therein, nor has he applied any methodology or standard to the facts of this case. The opinion must therefore be excluded.

### 6. *Similarity of prior incidents and sufficiency of prior remedial measures*

Dr. Zollo's testimony regarding "prior fall incidents" does not constitute expert testimony, and must be excluded. These statements in no way relate to the witness's field of expertise, and in no way satisfy Rule 702's *Daubert* standards.[4] The same applies to any testimony or opinion that Dr. Zollo might have intended to offer with respect to whether the remedial measures taken after prior incidents were "sufficient" to prevent Decedent's fall.

---

[4] Most of these references take the shape of argument that Plaintiff's counsel would be expected to make at trial. For example, Dr. Zollo delivers the following run-on sentence:

> Finally, it is apparent to the writer that the owners, managers or operators of the subject facility had knowledge of several prior fall incidents at the time of the fall of Ms. Priebel and, in the opinion of the writer, they should be expected to understand the dangerous condition of the subject construction and have knowledge of the minimum standards and the human factors that address the proper construction and maintenance of the pathways that service facilities on their property.

D.E. 61-3, at 5.

Accordingly it is

ORDERED AND ADJUDGED that the Motion to Preclude Evidence, Testimony, Argument, or Reference Regarding Subsequent Remedial Measures, D.E. 76, is GRANTED. It is further

ORDERED AND ADJUDGED that the Motion to Preclude Evidence, Testimony, or Argument Regarding Non-Binding Standards, Recommendations, and Guidelines, D.E. 77, is GRANTED. It is further

ORDERED AND ADJUDGED that the Motion to Exclude Opinions of Plaintiff's Liability Expert Ronald Zollo, D.E. 61, is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of August, 2013.

_____

*Ursula Ungaro*

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided to: Counsel of Record